NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0517n.06

No. 08-4131

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 28, 2009**
LEONARD GREEN, Clerk

PICA CORPORATION, )
)
    Plaintiff-Appellant, )
)
                                  ) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
) THE SOUTHERN DISTRICT OF
CLARENDON AMERICA INSURANCE ) OHIO
COMPANY; FIRST MERCURY INSURANCE )
COMPANY, )
)
    Defendants-Appellees. )
)
)

Before: KEITH, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. PICA Corporation ("PICA") appeals the district court's grant of summary judgment in favor of two of PICA's former insurers, Clarendon America Insurance Company ("Clarendon") and First Mercury Insurance Company ("Mercury"). PICA sued Clarendon and Mercury seeking a declaration that they had a duty to defend PICA in a separate lawsuit brought by MMCA Group LTD ("MMCA"). We affirm.

I.

Clarendon insured PICA under a Commercial General Liability policy that ran from October 15, 2003 through October 15, 2004. Mercury insured PICA under a substantially identical policy that ran from October 15, 2004 through October 15, 2005. Both policies included identical Errors

and Omissions endorsements requiring the companies to "pay those sums that [PICA] becomes legally obligated to pay as damages resulting from errors or omissions in the practices of [PICA's] business." Clarendon and Mercury Errors and Omissions Endorsements at 1. The endorsements gave the companies "the right and duty to defend any 'suit['] seeking those damages." *Id*.

The relevant coverage applied only to "injury, other than 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury,' *which is caused by an 'occurrence'* that occurs during the policy period and that takes place in the 'coverage territory.'" *Id*. An "occurrence," according to the policies, meant "*an accident*, including continuous or repeated exposure to substantially the same general harmful conditions." Clarendon and Mercury Commercial Gen. Liab. Coverage Forms at 12 (emphasis added). The policies also enumerated several exceptions to coverage, one of which was "damages arising out of . . . [PICA's] employment or personnel practices[.]" Clarendon and Mercury Errors and Omissions Endorsements at 2.

MMCA sued PICA in federal court in California, asserting, *inter alia*, claims for interference with a prospective economic advantage and misappropriation of trade secrets. The complaint specifically alleged that PICA unlawfully "contacted and solicited" MMCA employees to work for PICA. Complaint at 25, *MMCA Group, Ltd. v. Hewlett-Packard Co.*, No. 06-7067 (N.D. Cal. Feb. 20, 2007). MMCA further alleged that PICA was "aware of the employment status of the MMCA employees and associates being contacted and solicited[.]" *Id*. This conduct allegedly resulted in the loss of several "key employees and associates" to competitors, which damaged MMCA. *Id.*

PICA tendered its defense of the suit to Clarendon and Mercury, arguing that the injury alleged in MMCA's complaint was subject to coverage under the Errors and Omissions

endorsements. Both companies denied coverage, however, explaining that MMCA's claims did not stem from an "occurrence," *i.e.*, an "accident."

PICA then sued Clarendon and Mercury in the Franklin County Court of Common Pleas, seeking a declaration that the companies had a duty to defend PICA. Defendants removed the case to federal court, and the parties thereafter filed motions for summary judgment. The district court granted summary judgment in favor of Clarendon and Mercury, finding that "occurrence" meant "accident" as defined in the agreement, that MMCA's lawsuit did not allege injury due to an accident, and that, as a result, Clarendon and Mercury had no duty to defend PICA from MMCA's lawsuit.

This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*. *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 771 (6th Cir. 2009). "Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).

The policies state that the law of the insured's chosen forum governs their interpretation, which in this case is Ohio. Thus we interpret the policies under Ohio law.

PICA argues that the district court erred when it limited the definition of "occurrence" to "accident." "Occurrence," PICA contends, is "commonly understood to have a broader meaning than accident because it includes events that happen in any way at all." PICA's Br. at 17. But the

term's "broader meaning" is irrelevant; "[w]hen a contract term is defined in the policy, that definition controls what the term means." *Watkins v. Brown*, 646 N.E.2d 485, 487 (Ohio Ct. App. 1994). Here, the policies define "occurrence" as "accident." The Ohio Supreme Court holds that where an insurance contract defines "occurrence" as "accident," the term was "intended to mean just that[:] an unexpected, unforeseeable event." *Randolf v. Grange Mut. Cas. Co.*, 385 N.E.2d 1305, 1307 (Ohio 1979). PICA must establish, therefore, that MMCA's complaint alleges injury as the result of an unexpected, unforeseen event.

PICA contends it meets this test because MMCA's interference and misappropriation claims do not include an express allegation that PICA intended harm, and because California law—which is what governs MMCA's claims—does not require such intent. But those contentions too are ultimately beside the point. MMCA's complaint alleges that PICA knowingly raided MMCA of employees who themselves had knowledge of important trade secrets. Whether that allegation has merit is beyond the scope of this appeal; but what *is* entirely clear is that neither the alleged conduct nor the alleged resultant injury to MMCA was at all unexpected or unforeseeable to PICA. And that means MMCA's claims do not even arguably fall within the scope of PICA's Errors and Omissions coverage. There simply is no genuine issue as to that fact.

The district court's judgment is affirmed.